UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

Boris Colon,

    Debtor.
_____/

Case No. 16-11085

Chapter 7

OBJECTION TO
DEBTOR'S MOTION TO CONVERT
AND JOINDER IN TRUSTEE'S
RESPONSE IN OPPOSITION THERETO

    Secured Creditor, RES-FL EIGHT, LLC ("RES") objects to the Motion to Convert Case Under Chapter 7 to Case Under Chapter 13 [ECF No. 27] (the *"Motion"*) of Boris Colon (the *"Debtor"*), joins in Ross Hartog's (the *"Trustee"*) *Response in Opposition* [ECF No. 32] and states:

PRELIMINARY STATEMENT

    The Debtor has basically one valuable non-exempt asset, a Hialeah single-family residence, which likely has enough equity above the mortgage lien to satisfy the judgment lien of RES and enable the chapter 7 trustee to administer approximately $20,000.00 in additional equity and make a distribution to creditors. Throughout the pendency of this case, the debtor has continued to act to shield the property from administration, first through filings of questionable candor, and now by seeking to convert the case, despite having no possible hope of reorganizing due to having income of only $1,435.00 per month. Simply put, the motion to convert is a

bad-faith attempt to delay the inevitable administration of the property, and the Court should deny the motion.

## FACTUAL BACKGROUND

1.  On June 29, 2015, RES obtained a final judgment (the *"Final Judgment"*) against the Debtor in the amount of $79,896.67.

2.  On July 10, 2015, the Final Judgment was recorded in the public records of Miami Dade County at Book 29692, Page 4404.

3.  On January 26, 2016, the Debtor filed the instant petition under chapter 7.

4.  The Debtor lists the following property on his Schedule A:

| 1.3 | If you own or have more than one, list here: | | |
|---|---|---|---|
| | 311 W. 40 Place | What is the property? Check all that apply | |
| | Street address, if available, or other description | ■ Single-family home | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
| | | ☐ Duplex or multi-unit building | |
| | | ☐ Condominium or cooperative | |
| | | ☐ Manufactured or mobile home | |
| | Hialeah      FL      33010-0000 | ☐ Land | Current value of the entire property?   Current value of the portion you own? |
| | City      State      ZIP Code | ■ Investment property | $115,914.00      $115,914.00 |
| | | ☐ Timeshare | Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known. |
| | | ☐ Other _____ | |
| | | Who has an interest in the property? Check one | |
| | | ■ Debtor 1 only | |
| | Miami-Dade | ☐ Debtor 2 only | |
| | County | ☐ Debtor 1 and Debtor 2 only | ☐ Check if this is community property (see instructions) |
| | | ☐ At least one of the debtors and another | |
| | | Other information you wish to add about this item, such as local property identification number: | |
| | | Investment property (No rental income being received) | |

(the *"311 Property"*).

5.  As such, the Final Judgment attached as a judgment lien against the 311 Property. Despite this, the Debtor did not list RES as a secured creditor.

6.  Both recent appraisals and publicly available websites (such as Trulia and Redfin) suggest that the 311 Property is worth approximately $225,000.00, but

the Debtor listed the value as only $115,914.00, presumably in a bad-faith effort to induce the trustee to abandon what is likely the only valuable asset.

7.   As further evidence of the Debtor's bad faith efforts to frustrate administration of the 311 Property, on his Statement of Intention, the Debtor indicated he had claimed the 311 Property as exempt, despite not having claimed it as exempt on his Schedule C. *See Voluntary Petition,* [ECF No. 1] at 42.[1] In fact, at the meeting of creditors, the Debtor continued to assert the 311 Property was exempt despite being unable to indicate any legal basis for the exemption. Only after examination by RES and the chapter 7 trustee did the Debtor amend the Statement of Intentions (at RES's demand) and surrender the 311 Property. *See Amended Statement of Intentions* [ECF No. 15].

8.   Despite having agreed to surrender the 311 Property in response to the objections raised at the §341 meeting, on March 31, 2016, just as discussions as to an agreed administration of the 311 Property were maturing between the chapter 7 Trustee and RES, the Debtor, through new counsel, filed the Motion, seeking to convert the case to chapter 13.

---

[1] Reproduced in relevant part below:

**Part 1: List Your Creditors Who Have Secured Claims**

1. For any creditors that you listed in Part 1 of Schedule D: Creditors Who Have Claims Secured by Property (Official Form 106D), fill in the information below.

| Identify the creditor and the property that is collateral | What do you intend to do with the property that secures a debt? | Did you claim the property as exempt on Schedule C? |
|---|---|---|
| Creditor's name: **Regions Bank** <br> Description of property: **311 W. 40 Place Hialeah, FL 33010 Miami-Dade County Investment property** | ☐ Surrender the property. <br> ☐ Retain the property and redeem it. <br> ☐ Retain the property and enter into a Reaffirmation Agreement. | ☐ No <br> ■ Yes |

9.  The Motion to Convert is a frivolous attempt to stall administration of the 311 Property. The Debtor has no income to support a plan, and conversion of the case will only delay the administration of the Property and a distribution to creditors.

10. According to the Debtor's schedule I, the Debtor's sole source of income is $1,435.00 per month from Social Security. This is consistent with his testimony at the §341 meeting. On his schedule J, the Debtor reflects expenses of $1,364.93, despite not listing any healthcare expenses or utilities.

11. The Debtor has indicated through counsel that he intends to retain the 311 Property in the Chapter 13 case. Yet even his reported $70.07 in net income is overstated. Moreover, even if such amount were truly available, he could not even pay administrative expenses, let alone the secured claims required to be paid during the pendency of the plan, and thus, clearly, no chapter 13 plan could ever provide for a distribution to unsecured creditors, and of course could not be confirmed.

12. For these reasons, RES asks that the Motion be denied and the case proceed under chapter 7.

## MEMORANDUM OF LAW

I.  <u>The Debtor is not eligible to convert to chapter 13.</u>

   A.  **The Debtor's income is insufficient to sustain monthly payments under a plan**.

13. A court should dismiss a chapter 7 debtor's request to convert to chapter 13 if the debtor's income is insufficient to sustain monthly plan payments. *See In re Cherry*, 411 B.R. 427, 429 (Bankr. S.D. Fla. 2008). While debtors

ordinarily enjoy a unilateral right to convert cases pursuant to 11 U.S.C. § 706(a), "[o]nly an individual with regular income. . . may be a debtor under chapter 13." 11 U.S.C. § 109(e); see In re Howe, 2015 WL 4197058, at *3 (Bankr. M.D. Fla. 2015) (holding that "[a] debtor's right to convert a case . . . is not absolute"). More specifically, an "'individual with regular income' means [an] individual whose income is sufficiently stable and regular to enable such individual to make payments under chapter 13." 11 U.S.C.A. § 101. Here, the debtor clearly lacks income sufficient to enable him to make plan payments.

14. In *Cherry*, 411 B.R. at 429, the chapter 7 debtor filed a motion to convert to chapter 13 after the creditor and trustee filed an objection to the debtor's discharge. The court dismissed the debtor's request to convert because he did not possess "regular income pursuant" to 11 U.S.C. § 109(e). *Id.* at 429. The court held that debtor's monthly net income of $ 4,701.66 was insufficient to sustain monthly payments of $6,804.91 under the plan. *Id.*

15. Here, just as in *Cherry*, the Debtor may not convert to chapter 13 because he does not possess "regular income." Given that RES holds a secured claim of approximately $80,000.00, pursuant to 11 U.S.C. § 1325(a)(5), he would be required to pay such claim in equal payments with interest over 60 months. Those payments alone, without regard for the necessary payment of the senior secured lender, would exceed his income. [2]

16. Further, the Debtor's failure to include monthly healthcare and utility expenditures in his schedules likely indicates that Debtor's monthly expenses

---

[2] Assuming a *Till* rate of 5.25%, the payment would exceed $1,500 per month.

exceed his income. Accordingly, here, as in *Cherry*, the Debtor is absolutely incapable of making any plan payments because the Debtor does not possess any positive monthly net income. *Id.*

### B. The Debtor's bad faith precludes voluntary conversion.

17. A chapter 7 debtor's lack of candor in disclosing his assets prevents the debtor's conversion to chapter 13. *See Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 380 (2007) ("debtor who acts in bad faith prior to, or in the course of, filing a Chapter 13 petition by, for example, fraudulently concealing significant assets, thereby forfeits his right to obtain Chapter 13 relief."); *In re Alvarez*, 2011 WL 5593176, at *4 (Bankr. S.D. Fla. 2011) (holding that "bad faith conduct may cause a forfeiture of any right to proceed with [conversion]"). A court will only permit a debtor's request to convert if under the totality of circumstances the debtor proposed the request in good faith. *Alvarez*, 2011 WL at *4.

18. In *Alvarez*, the debtor requested to convert to chapter 13 after the trustee discovered that the debtor failed to properly schedule her jewelry. *Id.* at *1. The court held that the debtor forfeited her right to convert because she "engaged in misleading and fraudulent conduct." *Id.* at *4.

19. Likewise in *In re Mercado*, 376 B.R. 340, 346 (Bankr. M.D. Fla. 2007), the trustee argued that the debtors "acted in bad faith prior to, and during the course of, converting their case" and "the 'sole reason' why they converted their case to Chapter 13 was to avoid [a] hearing on [an] objection to exemption." Based on

suspicious timing and "misleading" statements in their schedules, the Court found the debtors had converted in bad faith and vacated the conversion. *Id.* at 348.

20. The Debtor's bad faith conduct should preclude him from voluntarily converting the case. As in *Alvarez*, the Debtor fraudulently concealed property or at the very least made a misleading disclosure because he incorrectly listed the 311 Property as exempt and falsely claimed the 311 property as exempt during the 341 meeting. Further, The Debtor amended his statement of intention only after RES and the trustee began an examining the debtor's assets. These together certainly suggest the Debtor has been less than candid in his disclosures.

21. Even more analogous, in *Mercado*, the Debtor only converted to chapter 13 "to avoid [a] hearing on an objection to exemption." *Mercado*, 376 B.R. at 346. Here, the situation is similar. After surrendering the 311 property to the trustee, the Debtor moves to convert the case, despite the unlikely prospect of reorganization, to prevent the administration of the 311 Property.

22. The conversion will only decrease the value of estate assets and diminish the distribution to unsecured creditors, while providing no benefit to the Debtor because a successful reorganization is unlikely. *See In re Gedda,* 2015 WL 1396605 at * 3 (Bankr. M.D. Fla. Mar. 24, 2015) (holding that the debtor's conversion is impermissible because it would "delay or frustrate the legitimate collection efforts of the debtor's creditors"). Instead, this is simply the Debtor's latest effort to preserve his interest in the 311 Property.

23. This Court should not countenance such bad faith. "Chapter 7 bankruptcy is not something that you can dip your toe into in order to check the temperature of the water. It is something you jump into and you can only be rescued from it if you can show cause." *In re Dreamstreet, Inc.*, 221 B.R. 724, 725-26 (Bankr. W.D. Tex. 1998). Here, the Debtor would ask this Court to permit him to file under chapter 7 to see if he can get an easy discharge without losing his assets, but seek to convert when and if the trustee finds assets to administer. That is not the "honest and unfortunate debtor" to whom title 11 provides relief.

    II.    <u>Proceeding under chapter 7 interest in the estate's best interest</u>.

24. In determining whether to convert the case, a court may consider the best interests of the creditors and the estate. *See Gedda*, 2015 WL at *3 (holding that the debtor's conversion would "delay or frustrate the legitimate collection efforts of the debtor's creditors"); *In re Howe*, 2015 WL 4197058, at *3 (Bankr. M.D. Fla. 2015)

25. The court should consider the totality of the circumstances, and evaluate any negative impact on the creditor and estate's interests. *See Alvarez*, 2011 WL at *2. In doing so, courts consider "the impact on the debtor of denying conversion weighed against the prejudice to creditors caused by allowing conversion." *Howe*, 2015 WL 4197058 at *3.

26. As in *Howe*, this Court should evaluate the interest of RES and the estate under the totality of the circumstances. Mr. Colon does not possess the income stream or assets necessary to confirm a chapter 13 plan; thus,

reorganization under chapter 13 will likely fail. Yet continued administration of the case in chapter 7 serves all creditors. RES and the trustee have already agreed to a surcharge pursuant to 11 U.S.C. §506(c) to ensure unsecured creditors receive a benefit from the sale of the 311 Property, and the Estate is likely to receive some equity above RES's judgment lien in addition. Put simply, chapter 7 has a real tangible (and near-term) benefit to secured and unsecured creditors, where chapter 13 will only result in delay, and even if the debtor is to be believed, a paltry distribution over five years.

27.    The totality of the circumstances clearly weighs against conversion. The Motion should be denied.

WHEREFORE, RES requests the entry of an Order (1) denying the Motion; and (2) granting such other and further relief as is just and appropriate.

>Respectfully submitted,
>
>/s/ Lawrence E. Pecan
>Lawrence E. Pecan, Esquire
>Florida Bar No. 99086
>In-House Counsel
>Rialto Capital
>790 NW 107 Avenue, Suite 400
>Miami, Florida 33172
>Lawrence.Pecan@rialtocapital.com

I HEREBY CERTIFY that this objection was served on the date noted in the header of this document upon counsel for the Debtor and counsel for the Trustee by transmission of Notices of Electronic Filing generated by the CM/ECF system.

>/s/ Lawrence E. Pecan
>Lawrence E. Pecan, Esquire
>Florida Bar No. 99086